Filed 5/5/21  P. v. Hutzler CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE, | F080761 |
| Plaintiff and Respondent, |  |
| v. | (Fresno Super. Ct. No. F19901871) |
| ERIN RICHARD HUTZLER, | **OPINION** |
| Defendant and Appellant. |  |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Thomas R. O'Brien, under appointment by the Court of Appeal, for Defendant Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Franson, Acting P.J., Meehan, J. and De Santos, J.

## INTRODUCTION

Appellant and defendant Erin Richard Hutzler was convicted of assault with a deadly weapon and sentenced to the second strike term of 13 years in prison. On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We affirm.

## FACTS

On March 13, 2019, Steven Mentzer was mowing the front lawn of his house in Fresno. A fence surrounded the front yard with a gate. His car was parked in the driveway, and the garage door was open.

Defendant rode his bicycle up to Mr. Mentzer's front gate while eating a slice of pizza. Mr. Mentzer recognized defendant from the neighborhood.

Mr. Mentzer testified defendant was angry and said Mr. Mentzer had been talking about him. Mr. Mentzer replied that he had not said anything. Defendant remained at the front gate. Mr. Mentzer politely told defendant to leave. Defendant started to touch the fence. Mr. Mentzer got upset and told defendant to "get the f[**]k out of here." Mr. Mentzer testified he made that statement because defendant "had an aggressive tone and I did not want to have to deal with him. So he wouldn't leave when I asked him the first time. When he came up to me and asked if I said something to him and I told him no, I asked him to leave politely the first time. Well, he continued to be there, which was very nervous to me. I did not want him around my property."

Defendant started to open the front gate. Mr. Mentzer told him, " 'Don't go there, dude.' " Mr. Mentzer testified defendant did not listen to him, and defendant opened the gate and "came at me" and acted "like he wanted to kick my butt."

Mr. Mentzer ran to his nearby car, opened the driver's door, and intended to grab his cell phone. Defendant jumped on Mr. Mentzer's back, pushed him into the driver's seat, and was "pawing" at him as if he was trying to reach into the car for the cell phone.

2.

The cell phone fell on the floorboard and neither of them reached it. Mr. Mentzer was able to push defendant away. Defendant's slice of pizza was splattered on the dashboard.

Defendant went to the passenger door, reached into the back seat, and grabbed Mr. Mentzer's walking stick. Mr. Mentzer testified the stick was a modified closet rod that was four feet long and weighed less than five pounds. Mr. Mentzer testified defendant looked like he was going to attack him, and again told defendant, " 'Don't go there, dude. Don't do it.' "

Mr. Mentzer ran into his open garage to get away from him. Defendant ran after him and hit him in the back of his head with the walking stick. Defendant then walked to the front gate with the stick. Mr. Mentzer told defendant he was going to call the police because defendant assaulted him with a stick. Defendant said, " 'It's your stick.' " Mr. Mentzer told defendant that he came onto his property, took the stick out of his car, and assaulted him with it. Defendant threw the stick over the fence and into the front yard and rode away on his bicycle.

Mr. Mentzer ran into his house, locked the doors, and called the police. He suffered swelling from the blow to his head, headaches, a sore back, and bruises. Mr. Mentzer testified the entire incident happened very fast, it was terrifying, and he never threatened defendant, used a weapon, or hit or kicked him.

Officer Louis Yang responded to Mr. Mentzer's residence, saw the injuries on his back and the bruises on his head, and testified they were consistent with being inflicted by the stick. Yang testified that Mr. Mentzer said when he ran to his car, he intended to grab his walking stick to arm himself, but he was unable to do so.

On March 17, 2019, Officer David Ponek responded to a residence where defendant was believed to be living. A woman answered the door and said defendant was not there. Ponek falsely said the house was under surveillance, and they knew he was inside; defendant appeared at the front door.

3.

Officer Ponek testified that he asked defendant if he had been in a disturbance a few days earlier with Mr. Mentzer. Defendant said he walked by Mr. Mentzer's house and stood in front of it, and Mr. Mentzer started to curse him. Defendant became very angry, put his hands on the gate, and the gate opened. Defendant said he did not intend to open the gate, it just opened. Mr. Mentzer ran to his car. Defendant said he was afraid Mr. Mentzer was going to get a gun from the car. Defendant said he entered the property and chased him to stop him from getting it and pulled Mr. Mentzer away from the car.

Officer Ponek asked defendant how Mr. Mentzer got the bruises and swelling, and if he hit him with the walking stick. Defendant said he only restrained Mr. Mentzer, and he did not hit him with a stick or his hands. Ponek asked defendant why he believed Mr. Mentzer had a gun. Defendant could not give a reason and shrugged his shoulders. Defendant never said Mr. Mentzer threatened or hit him.

**Defendant's trial testimony**

At trial, defendant testified that he lived about four houses away from Mr. Mentzer, who gave him a couch on a prior occasion. On the day of the incident, defendant was on his bicycle and eating pizza; he was heading to the store to buy something to drink. He saw Mr. Mentzer mowing the lawn, stopped at the gate, and asked if he wanted the couch back since defendant was moving. Mr. Mentzer said he did not care what defendant did and told him to go away. Defendant said he was not trying to cause any problems.

Defendant testified Mr. Mentzer became irritated and approached the fence. Defendant stayed calm and put his hands on the fence. Mr. Mentzer cussed him and said, " 'F[**]k you.' " Mr. Mentzer told defendant to get his hand off his fence and said, " 'I get it from the neighbors and now I'm getting it from you.' " Defendant was shocked by his behavior because he had never acted that way with him.

Defendant testified they argued across the fence, and defendant said that he did not need this. Mr. Mentzer ran to his car. Defendant felt threatened and thought

4.

Mr. Mentzer was running for a gun or a weapon and decided to enter the gate to stop something from happening. Defendant caught up with him at the car, where Mr. Mentzer was digging around the back seat. Defendant looked into the car and saw the walking stick. Mr. Mentzer grabbed the stick; defendant also reached for it; they struggled for it; and defendant got between Mr. Mentzer and the car.

Defendant pushed him away, and Mr. Mentzer went to the front seat and grabbed the stick. Defendant was still holding his piece of pizza and threw it at him. Defendant jumped on him; they again struggled over the stick; and they both fell out of the car. Mr. Mentzer ran into the house.

Defendant left the stick on the ground, walked away from the house, closed the gate, and headed to the store. Defendant did not call the police because he felt a crime had not been committed, and the entire incident lasted about 30 seconds.

Defendant testified he did not hit Mr. Mentzer with the stick or his fists, and he did not kick him. He did not know how Mr. Mentzer got the bruises on his head and back, but noticed he hit his head on the roof of the car.

Defendant admitted he had convictions for two prior crimes of moral turpitude. He also admitted that when Officer Ponek interviewed him, he failed to give certain details about the incident, including the struggle over the stick.

### PROCEDURAL BACKGROUND

On April 8, 2019, an information was filed in the Superior Court of Fresno County charging defendant with count 1, assault with a deadly weapon, a wooden board (Pen. Code, § 245, subd. (a)(1));[1] with two prior strike convictions (§§ 667, subd. (b)–(i) & 1170.12, subds. (a)–(d)), and two prior serious felony enhancements (§ 667, subd. (a)).

On October 17, 2019, after a jury trial, defendant was convicted as charged. Defendant waived a jury trial on the prior conviction allegations.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

5.

On October 18, 2019, the court convened the hearing on the prior conviction allegations. The prosecutor moved to file a first amended information to allege two additional prior strike convictions. Defendant objected. After hearing argument, the court granted the motion based on *People v. Valladoli* (1996) 13 Cal.4th 590, 594.[2]

Defendant then offered to admit the two prior convictions previously alleged in the information if the court denied the motion to amend. The court agreed. Defendant waived a trial and admitted the two prior strike convictions and two prior serious felony enhancements as previously alleged.

On December 16, 2019, the court convened the sentencing hearing. Defendant advised the court that he was withdrawing his previously filed motion to discharge appointed counsel pursuant to *People v. Mardsen* (1970) 2 Cal.3d 118.

The court found the two prior strike convictions arose from the same case, and the original sentence for one prior conviction had been stayed pursuant to section 654. Based on that situation, the court stated it would dismiss one prior strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and stay one prior serious felony enhancement. Defendant asked the court to strike or stay the second prior serious felony enhancement, and the court denied the motion.

The court imposed an aggregate term of 13 years, based on the upper term of four years for count 1, doubled to eight years as the second strike term, plus five years for the prior serious felony enhancement.

The court imposed a restitution fine of $5,000 (§ 1202.4, subd. (b)) and suspended the parole revocation fine (§ 1202.45). It imposed and suspended the court security fee of $40 (§ 1465.8), the criminal conviction assessment of $30 (Gov. Code, § 70373), and a probation report fee of $296.

---

[2] *Valladoli* held the court may grant the prosecution's postjudgment motion to amend an information to include prior conviction allegations before the sentencing hearing. (*People v. Valladoli, supra*, 13 Cal.4th at p. 594.)

On February 11, 2019, defendant filed a timely notice of appeal.

## **DISCUSSION**

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on July 31, 2020, we invited defendant to submit additional briefing. To date, he has not done so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.